U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

OCT - 8 2013

CLERK, U.S. DISTRICT COURT

By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| VICKI DIANE KING, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-632-A |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY ADMINSTRATION, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Vicki Diane King ("King") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). In October 2009, King protectively applied for SSI, alleging that her disability began in September 30, 2006.[1] (Transcript ("Tr.") 15,

---

[1] King originally also filed a claim for a period of disability and disability insurance benefits under Title II. (Tr. 15; *see* Tr. 132-38.) However, at the hearing before the administrative law judge, King amended her alleged onset of disability date from September 30, 2006 to October 21, 2009. (Tr. 15, 34.) King stated that she was aware that "this amendment would precluded [sic] her from establishing eligibility for Title II benefits and that the Title II application would be dismissed." (Tr. 15-16; *see* Tr. 34.) Consequently, the Court will not consider King's Title II application.

1

139-45; *see* Tr. 139-45.) Her applications were denied initially and on reconsideration, and King requested a hearing before an administrative law judge ("ALJ"). (Tr. 10; *see* Tr. 73-91.) The ALJ held a hearing on February 8, 2011. (Tr. 15; *see* Tr. 30-64.) At the hearing, King amended her disability onset date to October 21, 2009. (Tr. 15; *see* Tr. 34.) Thereafter, on March 22, 2011, the ALJ issued a decision that King was not disabled. (Tr. 12-25.) On May 23, 2012, the Appeals Council denied King's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4-9.)

## II.    STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant

2

from returning to her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUE

In her brief, King presents one issue to the Court: Whether the ALJ violated Social Security Ruling (SSR) 96-8p by failing to properly evaluate the opinion of her treating physician, Doug Hodde, M.D. ("Dr. Hodde") (Pl's Br. at 3-5.)

## IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his March 22, 2011 decision, stated that King had not engaged in any substantial gainful activity since October 21, 2009, the amended alleged onset date for her disability.  (Tr. 15, 23.)   The ALJ further found that King had four "severe impairments, including hepatitis C, degenerative changes and chronic spin in the spine, particularly the lumbar area, obesity, and bipolar disorder I, with histories of anxiety and personality disorders." (Tr. 23; *see* Tr. 16.)  The ALJ also held that none of King's impairments or combination of impairments met or equaled the severity of any impairment in the Listing.  (Tr. 23.)  As to King's physical RFC, the ALJ stated:

> Claimant has at all relative times retained the exertional capacity for the sustained performance of a modified range of sedentary work activities: she can occasionally lift/carry ten pounds; she can stand and/or walk for two hours per eight-hour workday; she can sit for six hours per day with allowance for normal work breaks; and she must alternate sitting and standing to alleviate pain and discomfort.

(Tr. 24, *see* Tr. 19-20.)  As to King's mental RFC, the ALJ found that she can "perform detailed but not complex work tasks." (Tr. 24; *see* Tr. 20-21.)  The ALJ opined, based on his RFC assessment, that King was not able to perform her past relevant work as a waitress, retail clerk/cashier, garment sorter, or meat wrapper. (Tr. 21-22, 24.) However, based upon the testimony of a Vocational Expert ("VE"), the ALJ determined that there were jobs in significant numbers in the national economy that King could perform. (Tr. 22, 24.)  Consequently, the ALJ found that King was not disabled.  (*Id.*)

4

## V.   DISCUSSION

King's claim is, in essence, that substantial evidence does not support the ALJ's physical[2]

RFC determination because the ALJ, in violation of SSR 96-8p, did not properly evaluate a

December 6, 2010 Medical Source Statement provided by the Plaintiff's treating physician, Dr.

Hodde.   (Pl's Br. at 3-5.) King claims that, because the ALJ's physical RFC determination

conflicted with such Medical Source statement, the ALJ erred by substituting his own opinion in

place of Dr. Hodde's opinion and not explaining why Dr. Hodde's opinion was not adopted.

(Pl.'s Br. at 4.)

RFC is what an individual can still do despite her limitations.[3]   SSR 96-8p, 1996 WL

374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do

sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see*

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).   A regular and continuing basis is an eight-

hour day, five days a week, or an equivalent schedule.   SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most.   *Id.*  The RFC is a function-by-function

assessment, with both exertional and nonexertional[4] factors to be considered, and is based upon

all of the relevant evidence in the case record.   *Id.* at *3–5.  The responsibility for determining a

claimant's RFC lies with the ALJ.   *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).

The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and

---

[2] Because King's arguments only relate to the ALJ's physical RFC determination, the Court will not review King's mental RFC determination. (*See* Pl.'s Br. at 4.)

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

Furthermore, SSR 96-8p, which relates to assessing a claimant's RFC, states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical fasts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .
>
>         . . . .
>
> . . . The RFC assessment must also consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

In addition, controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In a Medical Source Statement dated December 6, 2010, Dr. Hodde, noting that he began treating King in July 2009 and had since treated her on six occasions, diagnosed King with hepatitis C and identified that the clinical findings and objective signs for his opinions were "mild hepatomegaly." (Tr. 550; *see* Tr. 550-53.) Dr. Hodde opined that King could continuously sit for more than two hours at a time and stand continuously for one hour at a time in a competitive work situation. (Tr. 551.) Dr. Hodde also stated that King could "sit and stand/walk" for at least six hours total in an eight-hour work day. (Tr. 551.) Dr. Hodde further opined that King could walk two miles without rest, and noted that she was not experiencing pain at the time of her examination. (Tr. 550-51.) Additionally, Dr. Hodde concluded that King would need a job that permitted shifting positions at will and that King could occasionally lift or carry up to twenty pounds and frequently carry up to ten pounds in a competitive work situation.

(Tr. 551-52.)  Dr. Hodde further stated that King would have difficulty working at a regular full time job until at least March 2011 due to interferon treatments and that she would need to lie down or rest at unpredictable intervals during an eight-hour workday for approximately fifteen minutes at a time.  (Tr. 553.)

In this case, as noted above, the ALJ found that King had the physical RFC for the sustained performance of a modified range of sedentary work in which she could occasionally lift/carry ten pounds, stand and/or walk for two hours per eight-hour workday, and sit for six hours per day with allowance for normal work breaks.  In addition, the ALJ found that King must alternate sitting and standing to alleviate pain and discomfort.  (Tr. 24; see Tr. 20.)  As to Dr. Hodde's Medical Source Statement, the ALJ stated:

> On December 06, 2010, Dr. Hodde completed a medical source statement and suggested that claimant was capable of a modified range of sedentary to light duties as modified by such factors as a sit-stand option, the need to take unscheduled breaks and difficulty working at a full-time job on a consistent basis. The physician also suggested that claimant had some exertional abilities in excess of the sedentary level, as she could be on her feet for up to one continuous hour and six hours per workday and occasionally lift/carry items up to twenty pounds. However, I am not bound to accept even a treating physician's conclusion as to functional capacity or disability vel non, particularly when the opinion is not supported by detailed, clinical diagnostic evidence.  There is no indication that Dr. Hodde is aware of the entire body of medical evidence in this case, this form was not prepared for legitimate medical purposes of diagnosis or treatment in the course of an exam, and the physician did not refer to any particular diagnostic test or clinical observation, other than mild hepatosplenomegaly.
>
> Dr. Hodde noted he had examined claimant only six times since July 2009 and his notes lack clear, explicit objective observations and findings necessary to facilitate meaningful functional capacity assessments. . . .
>
> Claimant has not undertaken any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions she describes and there are no indicia of intractable pain, such as unexplained or undesired weight change, disuse muscle atrophy or guarding, blood pressure spikes or spells of rapid breathing or tachycardia, or premature aging. Claimant has not required inpatient care for any impairment and there have been no signs, such as marked, orthopedic, neuromuscular, sensory, coordination or reflex

8

symptoms or limitations, of a potentially debilitating vertebrogenic disorder. Dr. Hodde noted she reported numbness in her hands and feet after working, but she has no history of peripheral neuropathy or other neuorological impairments and there was no indication of nerve root compromise on the MRIs.

Dr. Hodde suggested the mixed sedentary to light exertional capacity and, I have concluded that if claimant is reduced to only sedentary base-level duties, the least strenuous of the several work activity levels, she would not require such accommodations as additional breaks or frequent absences.

(Tr. 19 (internal citations and footnotes omitted).)

In addition, the ALJ, in making his physical RFC determination, reviewed, *inter alia*, the following evidence in the record: (1) March 2007 x-rays from the Texas Department of Criminal Justice, Institutional Division ("TDCJ"), that showed King had mild degenerative changes in the mid-cervical spine and 15-s1 levels (Tr. 18; *see* Tr. 339); (2) June 2007 x-rays from the TDCJ that confirmed that King did not have significant stenosis (Tr. 18; *see* Tr. 303, 312); (3) a December 28, 2009 consultative exam in which David A. Ray, D.O. ("Dr. Ray"), diagnosed King with mild degenerative changes in the lumbar spine and mild cirrhosis and observed: (a) King was well-developed, well nourished, and not in acute distress; (b) King had reduced lumbar ranges of motion and positive straight-leg raising tests, but there was no tenderness, spasms or atrophy; (c) King walked erectly with a normal gait and sat, stood, moved about, squatted, rose, balanced, and got on/off the examining table without difficulty; and (d) King demonstrated "fine finger manipulation and appropriate bilateral grip strengths but she experienced pain lifting the 14-pound stool" (Tr. 18; *see* Tr. 451-53);[5] (4) a March 30, 2010 examination in which George Zey, M.D. ("Dr. Zey'") noted that King's cardiovascular and respiratory systems and extremities

---

[5] Specifically, the assessment noted that claimant squatted to the floor and arose without assistance, walked three steps heel to toe without loss of balance, and picked up a fourteen pound office stool, which induced back pain. (Tr. 452.)

were normal and that she had no motor or sensory deficits (Tr. 19; *see* Tr. 539-41); and (5)

King's testimony regarding her impairments (Tr. 17-19).

Contrary to King's claims, the ALJ did properly evaluate and thoroughly discuss Dr.

Hodde's December 6, 2010 Medical Source Statement in accordance with SSR 96-8p. (Tr. 16–

21.) The ALJ explained that he was not accepting Dr. Hodde's conclusions because, in essence,

the record did not indicate that Dr. Hodde was aware of the entire body of medical evidence in

this case nor did he refer to any particular diagnostic test or clinical observation in support of his

opinions (other than mild hepatosplenomegaly). (Tr. 19.) A careful reading of the ALJ's

decision shows that the ALJ did not, in fact, reject **all** of Dr. Hodde's opinions in the Medical

Source Statement. As noted above, Dr. Hodde, in the Medical Source Statement, found, that

King was capable of a modified range of sedentary[6] to light[7] work as she: (1) could continuously

sit more than two hours and stand one hour at a time; (2) could sit, stand, or walk at least six

hours in an eight-hour workday; (3) could occasionally lift/carry items up to twenty pounds and

frequently carry up to ten pounds; and (4) would need a job that permitted shifting positions at

---

[6] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). To perform the fall range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday and stand and walk for approximately two hours of an eight-hour day. *See* SSR 96-9p, 1996 WL 374185, at *6 (S.S.A. July 2, 1996).

[7] Pursuant to the regulations, light work is defined as follows:

> Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

will; (5) would need to lie down or rest at unpredictable intervals during an eight-hour day; and (6) would have difficulty working at regular full time job. (Tr. 550-53; *see* Tr. 19.) The ALJ, citing to SSR 96-8p, accepted part of Dr. Hodde's recommendations and determined, based on all the evidence in the record, that King should be limited to only sedentary work as she was not capable of performing any light work. (Tr. 19-20.) As to limitation "(1)" and the part of limitation "(2)" that limits King to sitting at least six hours in an eight-hour day, such limitations are consistent with sedentary work and were, in fact, adopted by the ALJ. As to the rest of limitation "(2)" and limitation "(3)", these limitations indicate King could actually perform **more** than what is required in sedentary work and were not accepted by the ALJ because he concluded, based on the other evidence in the record, that King was not capable of performing such activities. As to limitation "(4)", the ALJ adopted such limitation into the RFC determination. As to limitation "(5)", the ALJ rejected such limitation, explaining that limiting King to only sedentary work (as opposed to a modified range of sedentary to light work) would, based on the other evidence in the record, alleviate the need for such unscheduled breaks. Finally, as to limitation "(6)", the ALJ was not bound to accept the treating physician's ultimate conclusion as to disability as such a determination was a legal conclusion "reserved to the Commissioner." *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 416.927(d).

In summary, the ALJ did consider, evaluate, and analyze the treatment records and opinions of Dr. Hodde as required by the statutes, regulations, and SSR 96-8p and, in fact, accepted and included many of such opinions into the RFC determination. The ALJ properly discussed the evidence in the record in making his disability determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate

limitations into his residual functional capacity assessment that were most supported by the record. *See,* e.g., *Muse,* 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 22, 2013**, to serve and file written objections to the United States Magistrate Judge's proposed

12

findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 8, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE